

Brian Luettke
Luettke Firearms Consulting, Inc.
5557 28th Street SE Ste B #205
Grand Rapids, MI 49512

February 18, 2025

Andrew R. Szekely
Supervisory Assistant Federal Public Defender
Office of the Federal Public Defender for the District of Maryland
100 S. Charles Street
Tower II, 9th Floor
Baltimore, MD  21201

Dear Mr. Szekely,

I was asked to examine evidence and provide an opinion on the identification and classification of two alleged machinegun conversion devices in the case involving Mr. Osman Sesay and whether or not they are machineguns as defined in Title 26 U.S.C. § 5845(b).

I retired from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) on October, 31, 2020 after 22 years as a special agent, (29 years total law enforcement).  My career at ATF included being an instructor at ATF's National Academy teaching the Gun Control Act (GCA) and National Firearms Act (NFA) firearms identification block of instruction to new employees attending either the Special Agent Basic Training or the Industry Operations Investigator Basic Training academy courses.  I was also an ATF Firearms Instructor and attended many firearms armorer training classes.  In 2014, I was promoted to Supervisory Special Agent for the position of Resident Agent in Charge of the Grand Rapids, Michigan Field Office.  In my last position at ATF, I was the Chief of the Advanced Firearms and Interstate Nexus Branch, a branch within the Firearms and Ammunition Technology Division (FATD) in Martinsburg, West Virginia.

The pertinent definitions for this opinion are found in the Gun Control Act of 1968 (GCA) and the National Firearms Act (NFA) of 1934.

The Gun Control Act in Title 18 U.S.C. § 921(a)(3)(A) defines the term "**firearm**" (in part) as *"any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive"*.

The National Firearms Act in Title 26 U.S.C. §5845(b) defines the term "**machinegun**" as *"any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically*

*more than one shot without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."*

On December 6, 2024 I examined a Polymer 80 (Privately Made Firearm) pistol, F.M. Products pistol, two Glock pistols and two alleged "machinegun conversion devices" at the U.S. Attorney's Office in Greenbelt, MD. The four pistols are firearms as defined in Title 18 U.S.C. § 921(a)(3). The "machinegun conversion devices" were not attached to the Glock pistols, but rather were in zip lock type bags inside the evidence boxes. The "machinegun conversion devices" are made of a plastic type material and are in very rough condition.

I have read all of the discovery documents provided to me involving Mr. Osman Sesay. The discovery documents include reports written by the Maryland State Police and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I find it interesting the two alleged machineguns in this case did not function as machineguns when taken into evidence by law enforcement and initially test fired.

The Maryland State Police (MSP) report dated July 23, 2021, was signed by Detective Sergeant Lopez. In the report, Sergeant Lopez describes a "Glock model 23 .40 caliber, serial number YFB580" and also lists other firearms MSP has in evidence. Detective Sergeant Lopez further states that "during the test fires, I noticed that the Glock 23 .40 caliber pistol had an auto sear, however, it did not shoot automatically more than one shot by a single function of the trigger".

ATF's Firearms and Ammunition Technology Division report dated September 28, 2021, was written by FEO Eve Eisenbise. She identifies the same Glock model 23, .40 S&W caliber pistol with serial number YFB580 with a "machinegun conversion device" listed in Detective Sergeant Lopez's report. She uses Exhibit Number 001 to identify the Glock pistol and 001A to identify the "machinegun conversion device". On page three of her report she writes; "As received Exhibit 001A had a crack through the center of the back piece, causing it to bow outward allowing the firing pin spacer sleeve to protrude from the slide. I removed Exhibit 001A and repaired it using super glue, a metal nut and a clamp. This process was accomplished in under 10 minutes and allowing approximately 3 hours for the glue to dry."

FEO Eisenbise did not attempt to test fire the evidence in the condition it was received at her office. Rather, she immediately modified (altered) the condition of the evidence prior to test firing it. She could have written a report stating that due to the condition of the evidence received, it is not a machinegun as defined Title 26 U.S.C. §5845(b), but instead decided to see if she could make it into a functioning machinegun conversion device.

FEO Eisenbise later test fired the Glock pistol after super glueing the cracked backplate by

2

shooting two rounds by a single function of the trigger. She then tried to shoot three additional rounds of ammunition by a single function of the trigger, but only one round fired demonstrating semi-automatic function. She then inspected the firearm again and noticed the "leg portion" of Exhibit 001A "had cracked and bent".

Pictures of Exhibit 001A I took on December 6, 2024:








When I examined Exhibit 001A and saw the condition of Exhibit 001A, I was not surprised to read that it did not function as a machinegun for the Maryland State Police or reliably for FEO Eisenbise. Exhibit 001A was crudely made and is not dimensionally correct in size to function as a machinegun conversion device.  As shown in the pictures above, the alleged "machinegun conversion device" does not fit correctly into the rear part of the Glock pistol's slide.  In fact, Exhibit 001A only functioned once by shooting two shots, and that was only after FEO Eisenbise made it into a functioning machinegun conversion device.  I have not read any investigative reports stating the Glock 23 with Exhibit 001A attached ever functioned as a machinegun prior to FEO Eisenbise altering its condition with super glue.

I compared the size of Exhibit 001A to the size of an actual and functioning machinegun conversion device that is registered to Luettke Firearms Consulting, Inc. in the National Firearms Registration and Transfer Record (NFRTR). Luettke Firearms Consulting, Inc has a Federal Firearms License (Type 07/02) issued by the ATF.  The registered device is on the left:






5



On page seven, FEO Eisenbise identifies a Glock model 26 Gen5 pistol (Exhibit 008), caliber 9x19mm, serial number AESS782 with a "machinegun conversion device" identified as Exhibit Number 008A . FEO Eisenbise states in her report that she is going to demonstrate "Exhibit 008A is a combination of parts designed and intended for use in converting a weapon into a machinegun". She first test fires the Glock pistol by loading and shooting one round of ammunition, which functioned as designed. She then inserts a magazine with two rounds of ammunition and when she squeezes the trigger only one projectile was shot. Her attempt to demonstrate Exhibit 008A is a combination of parts designed and intended for use in converting a weapon into a machinegun failed during her test firing demonstration. However, she did demonstrate the Exhibits 008 and 008A function only as a semi-automatic pistol.

She then conducts a "closer examination" and "noted the leg portion had been pushed rearward into the back plate". FEO Eisenbise then removes the Exhibit 008A from the Glock pistol and uses "super glue to hold the leg in the forward position". She writes "This process was accomplished in under 5 minutes and allowing approximately 3 hours for the glue to completely dry". She then loads two rounds of ammunition into a magazine in order to "demonstrate Exhibit 008A is a combination of parts designed and intended for use in converting a weapon into a machinegun, but once again, Exhibits 008 and 008A only shoots one shot per function of the trigger which demonstrates it functions only as a semi-automatic pistol and it does not function as a machinegun.

FEO Eisenbise then conducts further examination of Exhibit 008A and "noted that the leg appears to be too narrow", leaving the Exhibit with an insufficient portion extending forward. "Lacking a complete leg, Exhibit 008A will not likely function as described above" as a machinegun. FEO Eisenbise is stating that Exhibit 008A is not dimensionally correct and has not and does not function as a machinegun.

FEO Eisenbise further writes "however, by simply replacing the leg portion, Exhibit 008A could be readily restored to a fully operable condition in less than approximately 25 minutes". This is pure speculation on her part and something she did not attempt to do, possibly due to her copious use of "super glue" (pictured below) failed to provide her with the desired machinegun test fire function.

Pictures of Exhibit 008A I took on December 6, 2024:






7

I compared the size of Exhibit 008A to the size of an actual and functioning machinegun conversion device that is registered to Luettke Firearms Consulting, Inc.:






8






9

Exhibit 008A's backplate is dimensionally not the same size (width and length) as the sample machinegun conversion device used for comparison. The "leg" portion is significantly different in size when compared to an actual and functioning machinegun conversion device. The "leg" design and shape is much thinner, which coincides with what FEO Eisenbise wrote when she stated "that the leg appears to be too narrow". However, Exhibit 008A's leg length is longer than the registered sample.

When the evidence was seized by law enforcement and test fired by the Maryland State Police (Exhibits 001 and 001A) and ATF (Exhibits 008 and 008A), neither functioned as machineguns during the test firing by the law enforcement agencies. Therefore, its highly probable that any person who may have shot these same pistols before law enforcement did, shot them in the same way and as semi-automatic pistols.

ATF Special Agents are taught at the academy the importance of the Supreme Court's decision in the Staple's case *(Staples v. United States, 511 U.S. 600, 602 n. 1 (1994)*. I have not read any report showing Mr. Sesay "knew of the features…that brought it within the scope of the Act". After all, the features of the alleged "machinegun conversion device" were broken, damaged, dimensionally incorrect, and they did not function as machineguns when initially test fired by law enforcement.

Based on the reports provided to me and my examination of the alleged "machinegun conversion devices", it is my opinion Exhibit 001A and Exhibit 008A are not machineguns as defined in Title 26 U.S.C. § 5845(b).


Respectfully submitted,

*[signature: Brian Luettke]*

Brian Luettke

10