IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Crim. No. MJM-21-298 |
| OSMAN MALIK SESAY, | * | |
| Defendant. | * | |

* * * * * * * * * *

**MEMORANDUM**

The Court conducted a pretrial conference in this matter on April 10, 2025, where it heard oral argument on pending motions as well as a dispute between the parties concerning jury instructions. At the pretrial conference, the Court made an oral ruling on the parties' dispute over jury instructions. The Government's motion to exclude the testimony of Brian Luettke remains pending. ECF No. 159. In this Memorandum, the Court will decide the pending motion and reconsider its oral ruling on the jury instruction issue. For reasons explained below, the Court (1) shall deny the Government's motion to exclude the testimony of Brian Luettke; and (2) shall, at trial, instruct the jury that a finding of guilt for violating 18 U.S.C. § 924(c)(1)(B)(ii) requires proof of the Defendant's knowledge of the aggravating type of firearm he possessed.

**I.   BACKGROUND**

Defendant Osman Malik Sesay (the "Defendant") is charged in a seven-count Third Superseding Indictment. ECF No. 140. As relevant here, Counts Three and Four allege that, on April 29, 2021, the Defendant possessed a Glock 26, 9mm semiautomatic pistol ("Exhibit 008") and approximately 18 rounds of 9mm ammunition in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and having previously been convicted of a crime punishable for a term exceeding one year, in violation of 18 U.S.C . § 922(g)(1). *Id.* at 4, 5. Counts

1

Six and Seven allege that, on July 16, 2021, the Defendant possessed several other firearms in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (c)(1)(B)(ii) and 922(g)(1), including a Glock, model 23, .40 S&W caliber firearm ("Exhibit 001") with a machinegun conversion device ("Exhibit 001A") installed. *Id.* at 7, 8.

As relevant to Count Six, 18 U.S.C. § 924(c)(1)(A)(i) provides a statutory minimum penalty of five years for "any person who, during and in relation to any . . . [federal] drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." Section 924(c)(1)(B)(ii) provides a 30-year minimum prison term "[i]f the firearm . . . is a machinegun or a destructive device . . . ."

To establish the violation of § 924(c)(1)(B)(ii) charged in Count Six, the Government will have to prove that Exhibit 001, with Exhibit 001A installed, constitutes a "machinegun" as defined in 26 U.S.C. § 5845(b). That statute defines "machinegun" as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

At the pretrial conference, the Court heard oral argument on the parties' dispute as to whether an offense under § 924(c)(1)(B)(ii) requires evidence that the Defendant knew he possessed a firearm that satisfies the statutory definition of a "machinegun." The Court gave an oral ruling that such evidence was not required. However, upon further consideration of both binding and persuasive authorities, the Court is convinced that its oral ruling was in error. For

reasons explained in Part II *infra*, the Court finds that the § 924(c)(1)(B)(ii) violation charged in Count Six requires proof of the Defendant's knowledge as to the type of firearm. *See United States v. Breit*, 754 F.2d 526, 530 (4th Cir. 1985) ("[D]espite the nonexistence of a specific rule in the Federal Rules of Criminal Procedure, a district court has the inherent power, and thus jurisdiction, to reconsider interlocutory orders prior to entry of judgment on such orders."). At trial, the Court will give a jury instruction consistent with the ruling explained herein.

The Court also heard oral argument at the pretrial conference for and against the Government's motion to exclude the testimony of the Defendant's firearms expert, Brian Luettke. Mr. Luettke intends to offer an opinion that Exhibit 001 and Exhibit 001A do not constitute a "machinegun" within the statutory definition. The Court took the matter under advisement. For reasons explained in Part III *infra*, the motion shall be denied.

## II.     *MENS REA* REQUIREMENT FOR § 924(c)(1)(B)(ii) VIOLATION

The parties have presented a dispute over jury instructions as it relates to the offense defined in 18 U.S.C. § 924(c)(1)(B)(ii), which is charged in Count Six of the Third Superseding Indictment. ECF No. 140 at 7. Section 924(c)(1)(B)(ii) criminalizes possession of a "machinegun" in furtherance of a federal drug trafficking crime. 18 U.S.C. § 924(c)(1)(B)(ii). A "machinegun" is defined, in part, as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). This offense carries a statutory minimum penalty of 30 years in prison. 18 U.S.C. § 924(c)(1)(B)(ii). Count Six also charges the lesser offense of possession of any firearm in furtherance of a federal drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). ECF No. 140 at 7. As relevant to Count Six, § 924(c)(1)(A)(i) provides a statutory minimum penalty of five years for "any person who, during and in relation to any . . . [federal]

drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." 18 U.S.C. § 924(c)(1)(A)(i). Section 924(c)(1)(B)(ii) has the effect of raising this five-year minimum prison term to 30 years "[i]f the firearm . . . is a machinegun . . . ." *Id.* § 924(c)(1)(B)(ii)

The parties' jury instruction dispute presents the question of whether a conviction under 18 U.S.C. § 924(c)(1)(B)(ii) for possession of a machinegun in furtherance of a drug trafficking crime requires the Defendant's knowledge that the firearm was a machinegun or had machinegun characteristics. At the pretrial conference, the Court orally ruled that such knowledge is not required. As explained below, the Court now finds that it erred in so holding and shall correct its error in the jury instructions to be given at trial.

"Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent." *Rehaif v. United States*, 588 U.S. 225, 228 (2019). The Court's analysis must begin with the statutory text. *Dean v. United States*, 556 U.S. 568, 572 (2009). The text of subsection § 924(c)(1)(B)(ii) provides that a person is guilty of the offense if she or he is "convicted of a violation of this subsection" and "the firearm possessed by [that] person . . . is a machinegun . . . ." 18 U.S.C. § 924(c)(1)(B)(ii). There is no requirement in the text of the statute that the person know that the firearm they possess is a "machinegun" or has characteristics that satisfy the statutory definition of "machinegun."

In a long line of cases, however, the U.S. Supreme Court and the U.S. Court of Appeals for the Fourth Circuit have applied a presumption of culpable mental state, or *mens rea*, to elements of crimes where the statutory text defining the crime contains no express *mens rea* requirement. This Court finds, upon further consideration of the Supreme Court, Fourth Circuit, and District of Maryland precedent, that § 924(c)(1)(B)(ii) must be interpreted to require knowledge as to whether

4

the firearm is, or has characteristics of, a "machinegun" to support a conviction under this provision.

### A. Relevant Case Law

As noted above, the Supreme Court has, in a long line of cases, interpreted criminal statutes to require a *mens rea* for specific elements of offenses defined by criminal statutes that lack express *mens rea* provisions.

In *Liparota v. United States*, for example, the Court addressed the *mens rea* necessary to establish food stamp fraud under 7 U.S.C. § 2024(b)(1). 471 U.S. 419, 424–26 (1985). The statute "provides that 'whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations' is subject to a fine and imprisonment." *Id.* at 420 (quoting 7 U.S.C. § 2024(b)(1)). The issue was whether, in a prosecution for this offense, the Government must prove that "the defendant knew that he was acting in a manner not authorized by statute or regulations." *Id.* at 420–21. Although the use of the term "knowingly" indicated congressional intent that "*some* mental state with respect to *some* element of the crime" was required, the text of the statute offered "little guidance" as to whether knowledge was required for the "manner not authorized" element of the offense. *Id.* at 424.

To resolve the issue, the Court drew upon the well-established legal principle that "an injury can amount to a crime only when inflicted by intention . . . ." *Id.* at 425–26 (quoting *Morissette v. United States,* 342 U.S. 246, 250 (1952)). Indeed, "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Staples v. United States*, 511 U.S. 600, 605 (1994) (quoting *United States v. United States Gypsum Co.,* 438 U.S. 422, 436 (1978)); *see also Morissette*, 342 U.S. at 250 ("It is as universal and

persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."). In light of these principles, the *Liparota* Court held that, "[a]bsent indication of contrary purpose in the language or legislative history of the statute, . . . § 2024(b)(1) requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations." *Liparota*, 471 U.S. at 425.

Similarly, in *United States v. X-Citement Video, Inc.*, the Court held that a conviction under 18 U.S.C. § 2252, a statute forbidding transportation of child pornography, requires knowledge that the persons depicted in the material engaging in sexually explicit conduct are indeed minors. 513 U.S. 64, 70–79 (1994). The Court so held despite the fact that "[t]he most natural grammatical reading [of the statute] suggests that the term 'knowingly' modifies only the surrounding verbs: transports, ships, receives, distributes, or reproduces." *Id.* at 68. The Court again concluded from its precedents in *Staples*, *Liparota*, *Morissette*, and *Gypsum* that "the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *Id.* at 70–72.

Of the oft-cited cases on the presumption of *mens rea*, *Staples* is particularly instructive here. In *Staples*, the Court examined 26 U.S.C. § 5861(d), the statute criminalizing possession of an unregistered "machinegun," as a type of "firearm" within the meaning of the National Firearms Act. 511 U.S. at 602–03. The same definition of "machinegun" applicable in the instant case applied in *Staples*: "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b), *quoted in Staples*, 511 U.S. at 602. Although § 5861(d) "is silent concerning the *mens rea* required for a violation[,]" the Court in *Staples* extended the requirement of knowledge "beyond that of mere possession to the nature of the weapon (its capability of

6

automatic firing) . . . ." *United States v. Langley*, 62 F.3d 602, 607 (4th Cir. 1995) (citing *Staples*, 511 U.S. at 600). Drawing upon well-established precedent for the presumption of *mens rea*, the *Staples* Court recognized that congressional silence as to the required mental state "by itself does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element, which would require that the defendant know the facts that make his conduct illegal." *Staples*, 511 U.S. at 605. The Court noted that it had not yet "undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not." *Id.* at 619–20. But the Court emphasized that a culpable mental state is "conventional[ly]" required for criminal violations. *Id.* at 605.

The *Staples* Court ultimately interpreted § 5861(d) to possess an implicit scienter element—specifically, knowledge that the weapon "had the characteristics that brought it within the statutory definition of a machinegun." *Id.* at 602, 619–20. In so holding, the Court emphasized that a § 5861(d) violation carries the "severe penalty" of a ten-year maximum term of imprisonment and is not the type of "regulatory" or "public welfare" offense for which Congress intentionally dispenses with the requirement of a culpable mental state. *Id.* at 606–18.

The U.S. Court of Appeals for the Fourth Circuit relied heavily upon *Staples* in *United States v. Tomlinson*, 67 F.3d 508, 513 (4th Cir. 1995). In *Tomlinson*, the defendant was charged under 18 U.S.C. § 922(g)(1) for unlawful possession of a firearm by a convicted felon. 67 F.3d at 510. The defendant had been previously convicted of a felony and, upon release from prison, was granted a restoration of civil rights under North Carolina law. *Id.* But he was later found in possession of a firearm that the district court determined to be a "weapon of mass death and destruction" under North Carolina law, which the defendant's restoration of civil rights did not permit him to possess as a convicted felon. *Id.* at 511–12. Notably, the district court also found

7

that the defendant "could not have known that the firearm he carried was a 'weapon of mass death and destruction' since no court had so held and the [firearm at issue] was sold over the counter throughout the state and nation." *Id.* at 512. At trial, over the defendant's objection, the district court instructed the jury that § 922(g)(1) required proof that the defendant "knowingly possessed a firearm" but did not require proof that "he knew his possession of that firearm was in violation of the law." *Id.* The jury convicted the defendant, and he appealed. *Id.*

The Fourth Circuit found error on appeal and reversed. Upon consideration of the Supreme Court's then-recent decision in *Staples*, the Fourth Circuit held that when, in a § 922(g)(1) case, "a defendant's status as a convicted felon turns on the possession of a particular type of firearm, a jury must be instructed that a defendant is not a convicted felon if, despite possessing such a firearm, he did not know it had the particular nature on which his 'convicted' status turns." *Id.* at 513–14. Specifically, the Government was required to prove the defendant's "knowledge of those facts that bring the firearm within [the] legal definition" of a "weapon of mass death and destruction[.]" *Id.* at 514.

In *Ruiz v. United States*, Judge Titus of this Court took up the question presented in the instant case: whether a conviction under 18 U.S.C. § 924(c)(1)(B)(ii) requires the defendant's knowledge that the weapon possessed was a machinegun. 146 F. Supp. 3d 726 (D. Md. 2015). The defendant had been convicted under this statute without a jury instruction that proof of such knowledge was required. *Id.* at 727–28. After his conviction was affirmed on appeal, he filed a timely petition under 28 U.S.C. § 2255 arguing that his trial counsel's performance was deficient in failing to request a jury instruction on *mens rea* with respect to the firearm's status as a machinegun. *Id.* The Court agreed, citing *Staples* and *Tomlinson*. *Id.* at 730–32. Judge Titus noted that both 18 U.S.C. § 924(c)(1)(B)(ii) and 26 U.S.C. § 5861(d)—the statute at issue in *Staples*—

8

"deal with automatic weapons and . . . share a common definition of a machinegun" from 26 U.S.C. § 5845(b). *Id.* at 731. Although the Supreme Court had not held that *mens rea* as to the type of weapon was required for a conviction under § 924(c)(1)(B)(ii), the Court found that the two statutes "should be construed harmoniously." *Id.* at 732. Accordingly, Judge Titus found that proof of *mens rea* as to the type of firearm is required for a conviction under § 924(c)(1)(B)(ii), a *mens rea* instruction should have been given to the jury, and defense counsel's performance was unreasonable in failing to request such an instruction. *Id.* at 732–33. Because no trial evidence was presented that the defendant was aware that the weapon was a machinegun, the outcome of the trial would have been different had the jury been properly instructed. *Id.* at 733–34. Therefore, the 28 U.S.C. § 2255 petition was granted, and the 18 U.S.C. § 924(c)(1)(B)(ii) conviction and sentence were vacated. *Id.* at 734.

### B. Analysis

In due consideration of *Staples*, *Tomlinson*, and *Ruiz*, this Court is persuaded that 18 U.S.C. § 924(c)(1)(B)(ii) requires proof that the defendant knew the firearm he possessed had the characteristics that made it a "machinegun" within the meaning of 26 U.S.C. § 5845(b). The Supreme Court's decisions in *Staples*, *Liparota*, and *X-Citement Video* suggest that the determination of whether to apply the presumption of *mens rea* should be made on an "element-by-element" basis. *United States v. Burwell*, 690 F.3d 500, 534 (D.C. Cir. 2012) (Kavanaugh, J., dissenting) (quoting *United States v. Bailey*, 444 U.S. 394, 406 (1980)).

As Judge Titus noted in *Ruiz*, 146 F. Supp. 3d at 731, the Supreme Court has specifically recognized that the "machinegun" provision in § 924(c)(1)(B)(ii) prescribes an element of the offense to be decided by a jury at trial, rather than a mere sentencing factor to be decided by a judge at sentencing. *United States v. O'Brien*, 560 U.S. 218, 230–31 (2010). This Court notes

9

foremost, as did the *O'Brien* Court, that the "machinegun" element of a § 924(c)(1)(B)(ii) offense raises the statutory minimum penalty applicable to § 924(c)(1)(A)(i) from five years to 30 years. *Compare* 18 U.S.C. § 924(c)(1)(A)(i) *with id.* § 924(c)(1)(B)(ii). It is clear that a § 924(c)(1)(B)(ii) offense is not the sort of "regulatory" or "public welfare" crime for which a culpable mental statute is often set aside. *See Staples*, 511 U.S. at 616–18. Indeed, this crime requires a drug trafficking crime or a crime of violence as a predicate offense, *see* 18 U.S.C. § 924(c)(1)(A), underscoring its serious nature. Moreover, it is clear from the facts of this case, as it was clear to the Supreme Court in *Staples*, that a machinegun may be difficult to distinguish visually or otherwise from a semiautomatic firearm. *See Staples*, 511 U.S. at 615 ("The Government does not dispute the contention that virtually any semiautomatic weapon may be converted, either by internal modification or, in some cases, simply by wear and tear, into a machinegun within the meaning of the Act. . . . Such a gun may give no externally visible indication that it is fully automatic.") (citations omitted). This Court finds the severe 30-year minimum penalty imposed under § 924(c)(1)(B)(ii) to be disproportionate to any violation of the statute through unwitting possession of a firearm that happens to fit the statutory definition of "machinegun" without the defendant's knowledge or intent. If Congress had intended for § 924(c)(1)(B)(ii) not to require knowledge of the firearm's aggravating status or characteristics, it would have stated this intention in the statutory text.

I note that, in *O'Brien*, the Supreme Court expressly declined to reach the issue of whether "a defendant who uses, carries, or possesses a firearm [in violation of § 924(c)(1)(B)(ii)] must be aware of the weapon's characteristics." 560 U.S. at 222. But the same considerations that led to the *O'Brien* Court's conclusion that § 924(c)(1)(B)(ii) prescribes an element of the offense, rather than a sentencing factor, also militate strongly in favor of a presumption that it requires a *mens*

*rea*, notwithstanding congressional silence. The Court found support for holding that 18 U.S.C. § 924(c)(1)(B)(ii) prescribes an element not only in "the substantial increase in the minimum sentence provided by the statute" but also in "[t]he immense danger posed by machineguns" and "the moral depravity in *choosing* the weapon . . . ." *O'Brien*, 560 U.S. at 230 (emphasis added). Similar considerations animated the Court's holding in *Staples* that 26 U.S.C. § 5861(d) contains an implicit requirement of *mens rea* as to the type of firearm possessed. *See Staples*, 511 U.S. at 619–20. I am persuaded that the *O'Brien* Court's description of the "moral depravity in *choosing*" to possess a weapon as dangerous as a machinegun in furtherance of drug trafficking necessarily presumes intention or knowledge in that choice. Therefore, the Court presumes that Congress intended for § 924(c)(1)(B)(ii) to require proof such a culpable mental state.

      As noted during the pretrial conference, the Supreme Court and the Fourth Circuit have commonly described the presumption of *mens rea* as "requir[ing] a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Carter v. United States*, 530 U.S. 255, 269 (2000) (quoting *X-Citement Video*, 513 U.S. at 72). My conclusion today is consistent with this principle. As held in *O'Brien*, possession of a "machinegun" specifically is an element of the § 924(c)(1)(B)(ii) offense. 560 U.S. at 230–31. Each element of a crime is a "fact necessary to constitute the crime." *Almendarez-Torres v. United States*, 523 U.S. 224, 239–40 (1998) (citation omitted). Because the fact that the defendant possessed a "machinegun" specifically is one such element, *mens rea* is necessary for this element in order to distinguish a criminal violation of § 924(c)(1)(B)(ii) from conduct that does not "constitute [this] crime." *Id.* Specifically, an individual who possesses a *non*-automatic firearm in furtherance of a drug trafficking crime would be guilty of a violation of § 924(c)(1)(A)(i) and therefore subject to a minimum penalty of five years of imprisonment. But he would be *innocent*

11

of a § 924(c)(1)*(B)(ii)* violation and would not be subject to the heightened 30-year mandatory minimum sentence. In the words of *Tomlinson*, a person's guilt or innocence for violating § 924(c)(1)(B)(ii) "turns on the possession of a particular type of firearm"—a "machinegun"—and, therefore, the presumption of *mens rea* requires the jury to be instructed that a person is guilty of this offense only if he had "knowledge of those facts that bring the firearm within [the] legal definition" of a machinegun. *Tomlinson*, 67 F.3d at 513–14.

As this Court noted during the pretrial conference, the Supreme Court in *Dean v. United States*, held that the sentencing enhancement provided in § 924(c)(1)(A)(iii) may be satisfied by the accidental discharge of a firearm and does not require *mens rea*. 556 U.S. 568, 572 (2009). Section 924(c)(1)(A)(iii) raises the mandatory minimum sentence for possessing a firearm under § 924(c)(1)(A)(i) from five years to ten years in cases where "the firearm is discharged[.]" 18 U.S.C. § 924(c)(1)(A)(iii). In determining whether the statute requires a *mens rea* as to the discharge, the Supreme Court first examined the statutory text and found no textual requirement that the defendant knowingly or intentionally discharge the firearm. *Dean*, 556 U.S. at 572. The Court noted the use of passive voice in 18 U.S.C. § 924(c)(1)(A)(iii), taking it as an indication that Congress did not intend to require proof of intentional discharge. *Id.* Next, the Court looked to the placement of § 924(c)(1)(A)(iii) within the larger structure of § 924(c), noting that Congress applied an express intent requirement for the parallel firearm brandishing provision in § 924(c)(1)(A)(ii) through the definition of "brandish" in § 924(c)(4), but did not provide any similar intent requirement for the discharge provisions in § 924(c)(1)(A)(iii). *Id.* at 572–73.

This Court finds the Supreme Court's reasoning in *Dean* to be inapplicable to § 924(c)(1)(B)(ii), the provision at issue in the instant case. Although the placement of both §§ 924(c)(1)(A)(iii) and 924(c)(1)(B)(ii) within the larger structure of § 924(c) are comparable, the

12

clear and material legal distinction between the two provisions is that the machinegun provision in § 924(c)(1)(B)(ii) prescribes an element of the offense while the discharge provision § 924(c)(1)(A)(iii) does not. *Dean* specifically describes the discharge provision in § 924(c)(1)(A)(iii) as a mere "sentencing factor" or "sentencing enhancement." *Id.* at 573–76. To be sure, the status of § 924(c)(1)(A)(iii) as a sentencing factor was not a focus of the Court's *mens rea* analysis in *Dean*. But, in *O'Brien*, the Court specifically cites *Dean* for the proposition that § 924(c)(1)(A)(iii) prescribes a sentencing factor, and not an element, and, on that basis, distinguishes the machinegun provision in 924(c)(1)(B)(ii) from the discharge provision in § 924(c)(1)(A)(iii). *O'Brien*, 560 U.S. at 233–34 (citing *Dean*, 556 U.S. at 573–74). The Court in *O'Brien* reasoned that if "Congress intended to treat firearm type as a sentencing factor, it likely would have listed firearm types as clauses . . . of subparagraph (A), instead of as clauses . . . of subparagraph (B)." *Id.* at 234. Thus, the *O'Brien* Court drew a dispositive legal distinction between the sentencing factors listed under § 924(c)(1)(A) and firearm type elements listed under § 924(c)(1)(B). I am persuaded that the discharge provision § 924(c)(1)(A)(iii) would have drawn a different *mens rea* analysis in *Dean* had that provision been deemed an element of the offense, like the machinegun provision in § 924(c)(1)(B)(ii), rather than a sentencing factor.

      I recognize that in *United States v. Burwell*, the U.S. Court of Appeals for the D.C. Circuit, en banc, held that the § 924(c)(1)(B)(ii) offense does not require knowledge that the firearm was a machinegun or capable of automatic firing. 690 F.3d 500, 507 (D.C. Cir. 2012). Having reviewed Judge Rogers's and then-Judge Kavanaugh's dissenting opinions in that case, I find the dissents to be more persuasive than the majority opinion. Each dissenting opinion set forth a thorough analysis of the *mens rea* presumption and its applicability to § 924(c)(1)(B)(ii). *See generally id.* at 519–27 (Rogers, J., dissenting); *id.* at 527–53 (Kavanaugh, J., dissenting). Based largely on the severe

13

penalty imposed under § 924(c)(1)(B)(ii), Judge Rogers concluded that a conviction under this statute requires "proof of the defendant's knowledge that the firearm was a machinegun." *Id.* at 520 (Rogers, J., dissenting). Judge Kavanaugh similarly concluded that the presumption of *mens rea* applies to "the automatic character of the weapon" in § 924(c)(1)(B)(ii) cases, *id.* at 547 (Kavanaugh, J., dissenting), based, in part, on his reasoning that the presumption of *mens rea* should generally apply to each element of a given crime, *id.* at 538. More recently, in *United States v. Perez-Greaux*, the First Circuit examined *O'Brien* and the Supreme Court's *mens rea* presumption cases and similarly held that § 924(c)(1)(B)(ii) is subject to a *mens rea* requirement. 83 F.4th 1, 17 (1st Cir. 2023). The First Circuit agreed with the rule proposed in Judge Kavanaugh's dissent in *Burwell*: that "mens rea presumptively applies to elements of a crime and because the Supreme Court [in *O'Brien*] determined that the automatic character of a firearm is an element of the offense, rather than a sentencing factor, it only follows that § 924(c)(1)(B)(ii) is subject to the *mens rea* presumption." *Id.*[1]

In sum, the Court concludes that a conviction under § 924(c)(1)(B)(ii) requires evidence that the Defendant knew a firearm he allegedly possessed "had the characteristics that brought it within the statutory definition of a machinegun[,]" *Staples*, 511 U.S. at 602—in other words, proof of the defendant's "knowledge of those facts that bring the firearm within [the] legal definition" of a "machinegun," *Tomlinson*, 67 F.3d at 514. *See also Ruiz*, 146 F. Supp. 3d at 732–33 (concluding that "in a prosecution under § 924(c)(1)(B)(ii), proof of *mens rea* is required," and finding error in Court's failure to give *mens rea* jury instruction). Alternatively, § 924(c)(1)(B)(ii) is, at best, ambiguous as to whether Congress intended to require a *mens rea* as to the firearm's status as a "machinegun," and, therefore, the rule of lenity requires the Court to construe the

---

[1] As explained during the pretrial conference, this Court does not agree with much of the First Circuit's reasoning in adopting this rule but finds its conclusion to be correct.

14

provision in favor of the Defendant, as he argued during the pretrial conference. *See Staples*, 511 U.S. at 619 n.17 (rule of lenity requires "an ambiguous criminal statute . . . to be construed in favor of the accused"). At trial, the Court shall give a jury instruction consistent with this conclusion.

### III. MOTION TO EXCLUDE MR. LUETTKE'S TESTIMONY

There is no dispute between the parties that, to establish the violation of § 924(c)(1)(B)(ii) charged in Count Six, the Government will have to prove that Glock firearm identified as "Exhibit 001," installed with the conversion device identified as "Exhibit 001A," constitutes a "machinegun" as defined in 26 U.S.C. § 5845(b). During discovery, the Defendant disclosed the rebuttal report of his firearms expert Brian Luettke. The Government moves to exclude Mr. Luettke's testimony as "based on an erroneous understanding" of the statutory definition of "machinegun" and "not based on any reliable methodology." ECF No. 159 at 1; ECF No. 163. The Defendant opposes the motion. ECF No. 160. The Court will deny the Government's motion for reasons explained below.

#### A. Expert Reports

During discovery, the Government disclosed to the Defendant in writing that, at trial, it intends to present the expert testimony of Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent ("SA") Eve Eisenbise, ECF No. 159-2, and provided a copy of her expert report, ECF No. 159-1. SA Eisenbise will testify, *inter alia*, that Exhibit 001, with Exhibit 001A installed, "shoots automatically more than one shot, without manual reloading, by a single function of the trigger," and "therefore is a 'machinegun' as defined in 26 U.S.C. § 5845(b)." ECF No. 159-1 at 8. SA Eisenbise states in her report that "Exhibit 001A is a machinegun conversion device for a Glock-type pistol . . . made by 3D printing manufacturing process." *Id.* at 3.

15

According to SA Eisenbise's report, Exhibit 001A was cracked and bowed when she received it for examination, but she removed it from Exhibit 001 and "repaired it using super glue, a metal nut and a clamp[,]" which took less than ten minutes and about three hours for the glue to dry. *Id.* SA Eisenbise test fired Exhibit 001 three times. *Id.* at 4. During the first test fire, Exhibit 001 expelled a single round of ammunition. *Id.* During the second test fire, it expelled two rounds "automatically, without manual reloading, by a single function of the trigger." *Id.* For the third test fire, SA Eisenbise inserted a magazine holding three rounds, but Exhibit 001 only fired one round through a single squeeze of the trigger. *Id.* SA Eisenbise noted that a portion of Exhibit 001A "had cracked and bent." *Id.*

SA Eisenbise also test fired the separate Glock firearm identified as "Exhibit 008," installed with a conversion device identified as "Exhibit 008A." *Id.* at 7. Exhibit 008A is described in SA Eisenbise's report as "a machinegun conversion sear for a Glock-type pistol . . . made by 3D printing manufacturing process." *Id.* SA Eisenbise test fired Exhibit 008 three times. *Id.* During the first test fire, Exhibit 008 expelled a single round. *Id.* For the second test fire, SA Eisenbise inserted a magazine containing two rounds, but Exhibit 008 expelled only one round with a single pull of the trigger. *Id.* SA Eisenbise noted that "the leg portion [of Exhibit 008A] had been pushed rearward into the back plate." *Id.* She then removed Exhibit 008A and "used super glue to hold the leg in the forward position." *Id.* Once Exhibit 008A was reinstalled, Exhibit 008 still only fired one of two rounds through a single squeeze of the trigger. *Id.* SA Eisenbise "noted that the 'leg' [of Exhibit 008A] appears to be too narrow," and states in her report that, without "a complete 'leg,' Exhibit 008A will not likely function as described above." *Id.* However, SA Eisenbise opines that "simply replacing the leg portion" could readily restore Exhibit 008A "to a fully operable condition in less than approximately 25 minutes." *Id.*

16

After receiving SA Eisenbise's report, the Defendant noticed Brian Luettke as a rebuttal expert, ECF No. 159-4, and disclosed his expert report to the Government, ECF No. 159-5. Mr. Luettke will opine, *inter alia*, that Exhibit 001A "was crudely made[,] . . . is not dimensionally correct in size to function as a machinegun conversion device[,]" and, specifically, "does not fit correctly into the rear part of [Exhibit 001's] slide." ECF No. 159-5 at 5. Mr. Luettke interprets SA Eisenbise's findings and conclusions from the second and third test fires of Exhibit 008 as a concession "that Exhibit 008A is not dimensionally correct and has not and does not function as a machinegun." *Id.* at 7. Mr. Luettke opines that SA Eisenbise's statement about restoring Exhibit 008A as "pure speculation" because SA Eisenbise did not make a second attempt to restore the device. *Id.* In addition, Mr. Luettke points out that that Exhibits 001 and 008 did not function as machineguns when test fired by the Maryland State Police, before SA Eisenbise altered Exhibits 001A and 008A. *Id.* at 5, 10. Based on the test firing of Exhibits 001 and 008, as well as measurements he took of each device, Mr. Luettke opines that "Exhibit 001A and Exhibit 008A are not machineguns as defined in 26 U.S.C. § 5845(b)." *Id.* at 10.

### B. Analysis

In *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the U.S. Supreme Court found "[i]mplicit in the text" of Rule 702 of the Federal Rules of Evidence, "a district court's gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). "To be relevant under *Daubert*, the proposed expert testimony must have 'a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *Id.* (quoting *Daubert*, 509 U.S. at 592). In assessing the reliability of expert testimony under Rule 702, "the district court must ensure that the proffered expert opinion is 'based

17

on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Id.* (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). *Daubert* "offered a number of guideposts to help a district court determine if expert testimony is sufficiently reliable to be admissible." *Id.*; *see also Daubert*, 509 U.S. at 593–94 (whether expert's theory or technique can be tested and has been subjected to peer review and publication, its potential rate of error, and its general acceptance). But "*Daubert*'s list of relevant considerations is not exhaustive" and "neither necessarily nor exclusively applies to all experts or in every case[.]" *Nease*, 848 F.3d at 229 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). A district court retains "'broad latitude' to determine whether these factors are 'reasonable measures of reliability in a particular case[.]'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 153).

The Court finds Mr. Luettke's anticipated testimony to be relevant and to rest on a reliable foundation. Mr. Luettke's qualifications are not in question. He has 22 years of experience as an ATF special agent, provided instruction to ATF agents on firearms, and served in multiple supervisory positions before retiring in 2020. ECF No. 159-5 at 1. Mr. Luettke's opinion that Exhibit 001A does not function as a machinegun conversion device is directly relevant to the § 924(c)(1)(B)(ii) offense charged in Count Six of the Third Superseding Indictment. This opinion is based on findings made by SA Eisenbise during her examination and test firing of both Exhibits 001 and 008, which involved alteration of Exhibits 001A and 008A, as well as measurements Mr. Luettke took of these devices. Mr. Luettke determined that Exhibit 001A "is not dimensionally correct in size to function as a machinegun conversion device[,]" *id.* at 5, which tends to make it less probable that, when Exhibit 001 was possessed by Defendant, it satisfied the statutory definition of a "machinegun." Specifically, if Mr. Luettke's opinion is accepted, it would tend to

make it less probable that Exhibit 001, with Exhibit 001A installed, "[was] designed to shoot, or [could] be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The Court finds that Mr. Luettke's conclusions would assist the jury in deciding whether Exhibit 001, with Exhibit 001A installed, satisfies this portion of the statutory definition of "machinegun."

The Government argues that "the statutory definition does not require that the device fire reliably." ECF No. 163 at 2. But Mr. Luettke's conclusions are not based solely on the inconsistent or unreliable automatic firing of Exhibit 001. They are also based on SA Eisenbise's observations and alteration of Exhibits 001A and 008A, as well as Mr. Luettke's own observations and measurements of these devices. Mr. Luettke's opinion may assist the jury in determining, from the totality of the evidence, whether Exhibit 001, with Exhibit 001A installed, was "designed to shoot" or could be "readily restored to shoot" in the manner of a "machinegun" when the Defendant allegedly possessed them. 26 U.S.C. § 5845(b). It could also assist the jury in deciding whether Exhibit 001A was "designed and intended solely and exclusively . . . for use in converting [Exhibit 001] into a machinegun." *Id.* The Court agrees with the Government that "the absence of a successful test fire is not dispositive of whether a weapon or device is a machinegun[,]" ECF 163 at 3, but Mr. Luettke's opinions based on the inconsistent test firing need not be dispositive to be relevant and helpful to the jury.

The Government argues that Mr. Luettke fails to explain how his measurements support his conclusion. ECF No. 163 at 4–5. The Court disagrees. Exhibit 001A was cracked and bowed when installed in Exhibit 001 at the time SA Eisenbise received the firearm, and she had to alter Exhibit 001A in order for the device to permit automatic firing of Exhibit 001. These facts combined with both SA Eisenbise's and Mr. Luettke's observations of both Glock firearms and

19

both conversion devices demonstrate a technical connection between the size of a machinegun conversion device and its effectiveness as a machinegun conversion device for a given firearm.

In sum, the Court finds Mr. Luettke's opinions to be relevant and based on reliable methods. The Government's motion to exclude his testimony shall be denied.

### IV.   CONCLUSION

For the foregoing reasons, the Court will deny the Government's Motion to Exclude Testimony of Brian Luettke, and, on reconsideration *sua sponte*, the Court will grant the Defendant's request for a jury instruction on the *mens rea* requirement for the 18 U.S.C. § 924(c)(1)(B)(ii) violation charged in Count Six. A separate Order will issue.


April 18, 2025                                                         /S/
Date                                                                         Matthew J. Maddox
                                                                             United States District Judge